426 So.2d 613 (1983)
STATE of Louisiana
v.
Joseph W. AMARENA.
No. 82-K-1643.
Supreme Court of Louisiana.
January 28, 1983.
*614 John F. Rau, Jr., Gretna, for relator.
John M. Mamoulides, Dist. Atty., William C. Credo, Gerald Alonzo, Asst. Dist. Atty., for respondent.
DIXON, Chief Justice.[*]
Defendant, Joseph Amarena, was charged by bill of information on August 20, 1979 with armed robbery in violation of R.S. 14:64. The bill of information was attacked by defendant because more than two years had passed since the date of the institution of the prosecution. C.Cr.P. 578.[1]
Writs were granted in this case on the application of the defendant to review the trial judge's ruling on a motion to quash the bill of information.
Documents introduced by the defendant at the hearing on the motion to quash, and by stipulation between the defense lawyer and the prosecutor, establish the following facts.
On March 20, 1979 two white men armed with revolvers robbed Pontchartrain Jewelers, taking loose diamonds and rings valued at over $61,000. Complete descriptions of the robbers were given to the police by two employees of the jewelry store. The robbers bound the hands of the employees with black plastic electrical tape and removed loose diamonds from the safe and rings from the front display cases.
The employees related to a detective that the two robbers had entered the jewelry store on the 16th of March and asked about purchasing a diamond. They left to return at 2:15 p.m. on the 20th of March, when they again looked at loose diamonds, then departed. At 5:20 p.m. March 20, 1979 they returned and committed the robbery.
The police obtained a detailed description from the employees, who were able to put together composite pictures of the robbers. Information about the robbery was distributed in a bulletin, along with photographs of the composite pictures of the robbers and a summary of the robbery.
On May 4, 1979 the Jefferson Parish sheriff's department received a telephone communication from the San Francisco police department about the purchase (apparently by California police) of $25,000 worth of rings and loose diamonds from two Louisiana residents believed to be from the New Orleans area. The San Francisco police sent the Jefferson Parish police photographs, called "surveillance photographs," of the two persons in their custody who had *615 sold the jewelry. Photographs of the rings and loose diamonds were also sent to the Louisiana police.
The employees of the jewelry store identified the jewelry by stock and code numbers of the Pontchartrain Jewelers, and by the handwriting on tags attached to the rings. All of the rings were identified as property of Pontchartrain Jewelers. One of the loose diamonds in a photograph was identified by a carbon deposit visible in the center of the diamond. Four white pieces of paper were identified as packets the loose diamonds were in when they were taken during the robbery. This identification was made from the handwriting on the packets.
The employees of the jewelry store viewed a photographic lineup consisting of "surveillance" photographs. The victims asked for better photographs, although one of them thought that one photograph showed two men similar in appearance to the ones who robbed the store.
Further communications between California and Jefferson Parish police produced Louisiana driver's license photographs of the two men held in California. Three employees of Pontchartrain Jewelers made positive identifications of pictures of the defendant and a Michael Pickett as the two men who robbed them on March 20, 1979.
Amarena was transferred to the federal authorities by the San Francisco police and pleaded guilty in the United States District Court, Northern District of California, to the interstate transportation of stolen goods in violation of 18 U.S.C. § 2315 (1961). On November 8, 1979 he was sentenced to serve four years in federal custody. The record does not reveal the date of his transfer from state authorities in California to federal authorities.
An arrest warrant was issued on May 10, 1979, and on August 22, 1979 a notice of an arraignment set for September 5, 1979 was sent out by the trial court in Jefferson Parish, but this notice was never served on the defendant. On September 6, 1979 the trial court issued an instanter subpoena for the defendant since he had failed to appear for his arraignment.
The Jefferson Parish district attorney, on January 10, 1980, wrote to the Governor of Louisiana requesting the extradition of Amarena from California. The state officials in Louisiana appeared to be under the impression that the defendant was still under the authority of the California state officials. In response to this request, which was forwarded by the Louisiana Secretary of State to the Governor of California on January 22, 1980, the California Attorney General informed the Louisiana Secretary of State that California was without jurisdiction to extradite the defendant, since he was incarcerated in the federal facility at Terminal Island until 1983, and returned the extradition papers.[2] This letter was forwarded to the Jefferson Parish district attorney's office on January 31, 1980.
In a letter dated April 21, 1980, the federal officials at Terminal Island prison asked that the Jefferson Parish sheriff's office inform them of the status of the warrant against Amarena, and informed them that if they still wished to secure his custody they should forward a warrant to the federal authorities to obtain a detainer. There appears to have been earlier correspondence from the federal officials at Terminal Island prison camp, but the copy of that correspondence in the record is unreadable.
On May 6, 1980 the Jefferson Parish sheriff's department sent the May 10, 1979 arrest warrant for the defendant to the federal facility to be lodged as a detainer. The federal officials at Terminal Island notified the Jefferson Parish sheriff's office on May 13, 1980 that their detainer was filed and that the defendant's discharge date was *616 tentatively scheduled as September 25, 1982.
The federal officials, on May 13, 1980, notified the defendant of the untried charges against him in Jefferson Parish and advised him of his legal right to request a trial on the charges within one hundred eighty days, his right to waive extradition and his ability to consent to being returned to the trial jurisdiction. The form, which defendant signed as receiving, also advised him of his right to oppose the request that he be delivered to Jefferson Parish for the final disposition of the charges pending against him.
In a letter dated April 14, 1981, a copy of which was sent to the Jefferson Parish district attorney and the Jefferson Parish sheriff, the defendant's California attorney stated: "... Mr. Amarena is a defendant in a matter which is now pending in Jefferson Parish, Louisiana and we are requesting that this matter be placed on the trial calendar pursuant to California Penal Code Section 1381." Therefore, defendant's California attorney requested that the defendant receive a speedy trial of the charges pending against him in Jefferson Parish.
On June 1, 1981, pursuant to a petition from the district attorney, the trial court issued a "writ of habeas corpus ad prosequendum" which was directed to the Regional Director of the Federal Bureau of Prisons in California. This writ required him to produce the defendant for a July 1, 1981 arraignment.[3] The record does not reveal whether this writ was ever actually sent to or received by the regional director. Defendant failed to appear for his arraignment on July 1, 1981 and the state requested and was granted an indefinite continuance.
On February 5, 1982 the unit manager of the facility at Terminal Island wrote the Jefferson Parish sheriff regarding the May 6, 1980 detainer request and inquired about the status of the request since they had received no further communications from Jefferson Parish officials relative to the defendant. In response to this letter, the Jefferson Parish sheriff wrote to the unit manager at the facility on February 15, 1982 indicating to him that they still wanted to obtain the custody of the defendant and would attempt to locate the extradition papers, or, if unable to do so, would reinstitute proceedings.
A second "writ of habeas corpus ad prosequendum" was issued by the trial court on March 15, 1982. This writ was directed to the Jefferson Parish sheriff commanding him to produce the defendant for arraignment set for May 12, 1982. A copy of this writ was sent to the federal officials at Terminal Island, where the defendant was still in custody, with a request that the Jefferson Parish sheriff be notified when the defendant would be available for the Jefferson Parish authorities.[4]
The Jefferson Parish sheriff obtained custody of the defendant, who appeared for his arraignment on May 5, 1982 and entered a plea of not guilty. Trial was set for June 21, 1982.
The date of the arraignment was two years and nine months after the date of the filing of the bill of information; thus the two year period for the commencement of trial was obviously exceeded. Unless there was an interruption of the prescriptive period as provided in C.Cr.P. 579, the indictment should have been dismissed under C.Cr.P. 581.
The state seems to argue in brief that simply because the defendant was in federal custody in California, the first subparagraph of C.Cr.P. 579 "should be interpreted *617 to mean that prescription is interrupted by the defendant being incarcerated by another state or the federal government." The brief further attempts to justify the fruitless efforts of the state to obtain the presence of the defendant in Louisiana for the purpose of prosecution as being sufficient to constitute an interruption of prescription.
There is no substance to the arguments of the prosecution. Although the prosecution was early informed of the whereabouts of the defendant, it was reasonably foreseeable that none of the efforts made to obtain the presence of the defendant in Louisiana would be successful; the state did not follow the requirements of any statute (for example see 18 U.S.C. § 4085) or federal regulation in attempting to obtain custody of the defendant for prosecution, although the defendant's own lawyer wrote the Jefferson Parish district attorney and sheriff requesting a speedy trial in Louisiana. The whereabouts of the defendant were known to Jefferson Parish officials for more than two years. His presence in Louisiana was easily obtainable. When the prosecution finally took the appropriate steps to obtain Amarena's presence in Jefferson Parish, he was promptly delivered. The state's argument that the time limitation on his trial was interrupted under C.Cr.P. 579 simply because he was in prison outside the state, and beyond the control of the state, is without merit. The mere physical detention of the defendant in a state or federal prison will not alone serve to interrupt prescription. See State v. Devito, 391 So.2d 813, 814 (La.1980); State v. Shushan, 206 La. 415, 19 So.2d 185 (1944).
Another ground of interruption not relied upon by the state in brief or oral argument, although it had been argued to the trial judge, was that prescription had been interrupted because defendant fled the state or was outside the state in order to avoid prosecution. The burden of proving that the defendant's purpose in remaining outside the state was to avoid detection, apprehension or prosecution, and thereby interrupted the two year prescription of C.Cr.P. 578 rests with the state. State v. Campbell, 404 So.2d 956, 959 (La.1981). This burden is a heavy one in which the record must clearly establish that the purpose of the defendant's absence was to avoid detection, apprehension or prosecution. State v. Williams, 414 So.2d 767, 768-69 (La.1982). See State v. Campbell, 404 So.2d 956 (La.1981); State v. Guidry, 395 So.2d 764 (La.1981); State v. Wicker, 391 So.2d 845 (La.1980); State v. Devito, supra; State v. Driever, 347 So.2d 1132 (La.1977).
Each subsection of C.Cr.P. 579[5] is applicable to the defendant in this case. The prescription of C.Cr.P. 578 running against trial is interrupted if the record establishes that Amarena fled or was outside the state with the purpose of avoiding detection, apprehension or prosecution. The record before us adequately demonstrates that the prescription was interrupted because the defendant "with the purpose to avoid detection, apprehension or prosecution [fled] from the state," or was "outside the state." C.Cr.P. 579(1).
Six weeks after the armed robbery of Pontchartrain Jewelers, the defendant was in the custody of the San Francisco police, having been apprehended in a police operation in which the police, for $25,000, bought the identical jewelry stolen in Louisiana. The custody of the defendant shifted from the San Francisco police to a federal penal institution in California, where defendant was incarcerated for interstate transportation of stolen jewelry. It is clear from the record that the defendant was one of the *618 robbers. It is inescapable that his presence in California (and therefore his absence from Louisiana) was closely, if not exclusively, related to his desire to sell the jewelry he stole in Louisiana. The record, therefore, adequately establishes that the defendant left the state and was outside the State of Louisiana "with the purpose to avoid detection, apprehension, or prosecution." C.Cr.P. 579(1). State v. Campbell, supra; State v. Montgomery, 257 La. 461, 242 So.2d 818 (1970). Prescription was therefore interrupted.
However, a time came when the state learned of the defendant's whereabouts and had within its power the ability to obtain the custody of the defendant. State v. Devito, supra at 814 and 816. The Jefferson Parish officials learned of Amarena's incarceration in the federal facility at Terminal Island when they received the letter from the California Attorney General, which was forwarded to them by the Louisiana Secretary of State. The forwarding date appears to have been January 31, 1980; by February of 1980 it was no longer beyond the control of the state to obtain the custody of the defendant. Any interruption of the period of limitation which existed under C.Cr.P. 579(1) ceased when the state learned of the incarceration, location and availability of the defendant, and the two year prescriptive period began to run anew from that time.
Under C.Cr.P. 579(2) if the presence of the defendant cannot be obtained by legal process or for any other cause which is beyond the control of the state, the two year prescriptive period will be interrupted.
In State v. Shushan, supra, the defendant was imprisoned in a federal penitentiary outside the State of Louisiana and this court found that the defendant could have been obtained by a proceeding which would have been honored by the federal government. Although not a fugitive, since Shushan could have been obtained by legal process, this court held that the running of prescription against his prosecution was not interrupted.
The obverse of that ruling is codified in C.Cr.P. 579(2); it provides that if the defendant cannot be tried because his presence cannot be obtained by legal process or because of any other cause which is beyond the control of the state, the prescriptive period of C.Cr.P. 578 is interrupted. The official redactor's comments to C.Cr.P. 579 indicate that the Shushan doctrine has been expanded by the phrase "because his presence for trial cannot be obtained by legal process." C.Cr.P. 579, Official Revision Comment (d). This, the comment suggests, is intended to cover situations where the defendant is incarcerated in other jurisdictions and the processes of Louisiana will not be honored.
In the present case, the fact that the state finally proceeded in the proper fashion and successfully obtained the custody of the defendant indicates that, had the state used the proper methods earlier, their requests would have been honored. The letters received by the state officials demonstrate that the federal officials were cooperative. The federal officials inquired about the case when they did not hear from the state officials within a reasonable period of time, in their letters to the Jefferson Parish sheriff in April of 1980 and February of 1982. Had the Jefferson Parish officials followed the proper procedures and followed up on the effort (as they did in 1982), they probably would have obtained the defendant as effortlessly as they did in 1982. The record suggests that the efforts of the state to secure the custody of the defendant were marked by the use of inappropriate procedures and a notable lack of diligence. It is clear that it was within the state's power to secure the custody of the defendant by legal processes, and C.Cr.P. 579(2) will not operate to interrupt the running of the two year prescriptive period which began in February of 1980.
But the last sentence of C.Cr.P. 579 provides that prescription began to run anew from the date the cause of interruption "no longer exists." The interruption of prescription because of Amarena's flight from Louisiana came to an end when the *619 state learned of the defendant's whereabouts and had the power to obtain the return of the defendant to this jurisdiction. Prescription once more began to run against the state in February of 1980, when the California Attorney General wrote the Louisiana officials, telling them where Amarena was. This prescription was not thereafter interrupted for more than two years. The arraignment of defendant on May 5, 1982 and the setting of trial for June 21, 1982 clearly fall beyond this prescriptive period.
We find that the state did not try the accused within the time mandated by law under C.Cr.P. 578, and that the defendant's motion to quash the indictment should have been granted.
The ruling of the trial court on the motion to quash the indictment is reversed. The indictment is dismissed, and the defendant is discharged. C.Cr.P. 581.
MARCUS, J., dissents for reasons assigned by LEMMON, J.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
This case turns essentially on the application of the burden of proof in prescription cases and on the interpretation of La.C. Cr.P. Art. 579.
The usual rule in prescription cases is that the party pleading prescription has the initial burden of proving that the prescriptive period has run, after which the party opposing the plea of prescription has the burden of proving that prescription was interrupted. However, when the opposing party successfully proves that prescription was interrupted, the burden should be placed on the party pleading prescription to prove that the interruption terminated and that the prescriptive period has run anew since the termination.[1]
In the present case, there was no dispute that the two-year prescriptive period had elapsed when the trial was not commenced within two years of the institution of prosecution on August 20, 1979. The state, thus having the burden of proving interruption, established that prescription was interrupted under Article 579(1) when the defendant, with the purpose of avoiding prosecution, fled from the state and was outside of the state continuously during the period after prosecution was instituted.[2] For defendant to prevail on the issue of prescription, it was therefore necessary for defendant to present evidence establishing that the interruption of prescription had terminated and that the two-year period of limitation had run after the date of termination.[3]
The majority incorrectly concludes that the cause of the interruption under Article *620 579(1) ceased to exist when defendant's whereabouts became known and his presence could be obtained by legal process. At that point in time, perhaps, the cause of the interruption under Article 579(2) ceased to exist.[4]
However, the cause of interruption in a case governed by Article 579(l) continues to exist until the defendant, after initially leaving the state to avoid prosecution and thereafter remaining outside the state, does something to indicate a change in his intent or purpose to avoid prosecution by Louisiana authorities. Since the burden is on defendant to prove termination of the cause of interruption of prescription, he had the burden of proving that he no longer intended to avoid prosecution at some point in time more than two years before the date for commencement of trial.[5] The only evidence in the present record of defendant's change of his initial intent or purpose to avoid prosecution is a letter by the California attorney on April 14, 1981 to the Louisiana District Attorney, requesting that the case be placed on the docket. Since the state scheduled the commencement of trial within two years of April 14, 1981, defendant failed to prove the lapse of two years after the termination of the cause of interruption of the prescriptive period.
NOTES
[*] Judge William Norris III of the Second Circuit Court of Appeal participated in this decision in place of Blanche, J., recused.
[1] "Except as otherwise provided in this Chapter, no trial shall be commenced:

(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
(3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation." C.Cr.P. 578.
[2] It appears that the State of Louisiana was aware of the defendant's incarceration at Terminal Island prior to the receipt of this letter. The Jefferson Parish district attorney's office in its January 10, 1980 letter to the Governor of Louisiana informed the Governor that the defendant was in the custody of the Bureau of Prisons, Federal Correctional Institution, Terminal Island. However, it is unclear from the record when the state obtained this information.
[3] This action appears to have been initiated by the district attorney upon the advice of the federal officials at the Terminal Island facility where the defendant was in custody.
[4] An assistant district attorney, Gerald R. Alonzo, testified at the hearing on the motion to quash that the district attorney's office, after several phone calls in 1982, realized that they should have directed the first "writ of habeas corpus ad prosequendum" to obtain Amarena to the Jefferson Parish sheriff and sent a copy to the federal facility, rather than directing it to the regional director of federal prisons as they had previously done.
[5] "The period of limitation established by Article 578 shall be interrupted if:

(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists." C.Cr.P. 579.
[1] Article 579 expressly provides that the period of limitation commences to run anew from the date that the cause of the interruption no longer exists, but does not provide which party has the burden of proving that the cause of interruption no longer exists. It is appropriate to place this burden on the party pleading prescription as a rejoinder to the proof by the opposing party that the original period of limitation was interrupted. Moreover, in cases of doubt, such a burden should be placed on the party who benefits by the plea.
[2] Arguably, the state also proved that prescription was interrupted under Article 579(2) because defendant's presence could not be obtained for trial by legal process. Defendant was incarcerated in a federal penitentiary in California, and there was no Louisiana process which the federal authorities were compelled to honor, although the federal authorities did have discretion to honor a request that defendant be returned to this jurisdiction. The state proved that the first request for defendant's presence was not honored.
[3] Because there were two causes of interruption of prescription, it was necessary for defendant to prove both causes no longer existed. The majority concludes that the interruption of prescription under Article 579(2) was terminated when the state discovered the fact of the defendant's incarceration in a federal penitentiary, at which point he could no longer be considered a fugitive. See State v. Shushan, 206 La. 415, 19 So.2d 185 (1944). The majority, however, did not cite any procedure for compelling defendant's presence for trial during incarceration in a federal penitentiary (during which he is not subject to extradition). The fact that the federal authorities complied with the Louisiana authorities' second request for defendant's presence does not establish that his appearance could have been "obtained by legal process" during the prescriptive period.

In the Shushan decision the court rejected the state's contention that prescription should not run while the defendant was in a federal penitentiary and not amenable to trial, noting that defendant's presence for trial could have been obtained by a writ of habeas corpus ad prosequendum which would have been honored by the federal government. Official Revision Comment (d) to Article 579 notes that the "Shushan doctrine" was expanded by use of the phrase "because the presence for trial cannot be obtained by legal process" in order to cover situations in which the defendant is incarcerated in other jurisdictions and the processes of Louisiana will not be honored.
The present case is distinguishable from State v. DeVito, 391 So.2d 813 (La.1980), on the basis that defendant's presence for trial in the DeVito case could have been obtained by the legal process of extradition, so that prosecution was arguably never interrupted by the operation of Article 579(2), (although prescription was clearly interrupted under Article 579[1]).
[4] The present case can be distinguished from the Shushan case on the basis that Shushan never left the state with the purpose of avoiding prosecution of the charged state offense, but rather remained in the state until he was tried and convicted on the federal offense and was then incarcerated outside of the state. Therefore, the facts of the Shushan case would not have established a cause for interruption of prescription under present Article 579(1).
[5] Defendant must prove both the fact that he changed his intent to avoid prosecution, as well as the date on which that (previously established) "purpose to avoid" ceased to exist.