501 So.2d 313 (1987)
STATE of Louisiana
v.
William J. KRAFT.
No. 86-KA-155.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1987.
Rehearing Denied February 18, 1987.
*314 Carole H. Burstein, 24th JDC Indigent Defender Bd., New Orleans, for defendant-appellant.
Dorothy A. Pendergast, Dist. Atty's Office, Gretna, for plaintiff-appellee.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
On March 1, 1978 a bill of information was filed charging William Kraft, the defendant, with a violation of R.S. 14:95.1, illegal carrying of a concealed weapon by a convicted felon. The defendant failed to appear for arraignment on March 16, 1978 and an attachment was issued. The defendant was arraigned on August 18, 1985 (more than seven years after the filing of the bill of information) and he pled not guilty. On October 2, 1985, the defendant's Motion to Suppress was denied. On October 21, 1985, the defendant's Motion to Quash was denied. The defendant withdrew his plea of not guilty and entered a plea of guilty as charged, reserving his right to appeal under State v. Crosby, 338 So.2d 584 (La.1976). On January 8, 1986, the defendant was sentenced to ten years at hard labor without benefit of probation, parole or suspension of sentence. The defendant was also fined five thousand ($5,000.00) dollars, court costs and fees. On January 10, 1986, the defendant filed a Motion for Appeal.
Defendant asserts the following specifications of error:
1. The Bill of Information should have been quashed and the case declared prescribed when the State failed to meet its burden of proof that it attempted to provide the defendant with a speedy trial.
2. The pistol should have been suppressed as evidence in the trial because it was found in the course of an illegal search *315 by security guards acting as agents of the police in an improper manner.
3. When the Motion to Quash and the Motion to Suppress were denied by the trial judge and counsel for defendant announced her intention to take writs, the defendant should not have been forced to go to trial that afternoon, especially since the trial was only set for some time that week.
4. The sentence of ten years given by the trial judge was excessive, considering the plea bargain commitment to follow the pre-sentence investigation and the fact that the gun was not allegedly carried in the commission of any crime.
In the first specification of error the defendant alleges that the trial court erred in denying his motion to quash. The defendant argues that since more than two years had elapsed between the filing of the bill of information and his arraignment, his prosecution had prescribed.
C.Cr.P. art. 578 provides:
Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
(3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation. [Emphasis supplied]
At the time[1] of the commission of the offense, C.Cr.P. art. 579, provided:
The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
In Rico v. Vangundy, 461 So.2d 458 (La. App. 5th Cir.1984) we recognized the general rule that "a law can prescribe only for the future. L.S.A.-C.C. art. 8." Id. at 462. We also explained in Rico that "the jurisprudence provides that the [general] rule applies solely to substantive law as distinguished from merely procedural, interpretative, curative or remedial law." Id. at 462.
The legislature expressed no intent to apply Section (3) retroactively. See Acts 1984, No. 671, section 1. Moreover, since Section (3) provides for an additional method for interruption of the prescriptive period, it bears upon a defendant's right to a speedy trial. Thus, Section (3) should not be given retroactive application in light of the constitutional safeguard of the right to a speedy trial.
The State appears to argue that the prescriptive period of C.Cr.P. art. 578 was interrupted by the defendant's failure to appear in court after a subpoena had been served on the defendant's father on March 9, 1978 pursuant to C.Cr.P. art. 579, subd. A(3). Since this section had not been enacted at the time of the commission of the defendant's offense, the state's reliance on Section (3) is misplaced.
The State bears a heavy burden of proof to show that the prescriptive period has been interrupted. State v. Stokes, 433 So.2d 96 (La.1983).
In this case, the defendant was originally convicted of simple burglary on September 19, 1972. The defendant was released on *316 parole on November 5, 1974. The bill of information charging the defendant with the present offense was filed on March 1, 1978. Service was effected on the defendant's father on March 9, 1978. An attachment for the defendant was issued on March 17, 1978. On July 20, 1978 the defendant was arrested in Houston, Texas and subsequently convicted of aggravated robbery and forgery.
On November 1, 1978 a lieutenant in the St. Tammany Parish Sheriff's Office noted on the attachment issued by the 24th Judicial District Court that the defendant was serving twenty-five years at hard labor in Texas.
Mr. Honig, the assistant D.A. admitted that the defendant had been incarcerated in Texas; however, he asserted that the state had no notice at the time of the incarceration that the defendant was in Texas.
In State v. Amarena, 426 So.2d 613 (La. 1983) the court held that although the prescriptive period of C.Cr.P. art. 578 may be interrupted by the defendant's presence outside of the state under C.Cr.P. art. 579(1), the State bears the heavy burden of establishing that the purpose of the defendant's absence from the state was to avoid detection, apprehension or prosecution.
However, any interruption of the period of limitations under C.Cr.P. art. 579(1) ceases when the State learns of the incarceration, location and availability of the defendant. State v. Amarena, 426 So.2d at 618.
In this case, as was noted on the instanter subpoena issued on March 17, 1978, the Jefferson Parish authorities were informed on November 1, 1978 that the defendant was incarcerated in Texas with a prison term of twenty-five years. At that time, prescription began to run anew. State v. Amarena, supra. The defendant was not released in Texas until 1982. Nothing in the record shows that the State attempted to gain the presence of the defendant for trial and that the defendant's presence could not be obtained by legal process as per C.Cr.P. art. 579(2). In fact, the defendant was taken into custody by the Louisiana Correctional System for a parole violation in 1982 and he was not released from that custody until June 6, 1984.
Thus, the state did not bear its burden of proving that prescription had been interrupted. Although we have grave reservations about reversing the trial judge's ruling on the motion to quash since the defendant's testimony indicates that he has had previous felony convictions, we have no alternative but to do so.
Accordingly, we find that the state did not try Kraft within the time mandated by L.S.A.-C.Cr.Proc. Art. 578 and defendant's motion to quash the Bill of Information should have been granted. Since the assignment of error dealing with prescription has merit we pretermit discussion of the remaining assignments.
Thus, the ruling of the trial court on the motion to quash the Bill of Information is reversed and the indictment dismissed. Furthermore, the conviction by plea under L.S.A.-R.S. 14:95.1, possession of a weapon by a convicted felon, as well as the sentence thereunder is set aside and the defendant is discharged. L.S.A.-C.Cr.Proc. 581.
REVERSED AND RENDERED; SENTENCE VACATED.
GAUDIN, J., dissents with written reasons.
GAUDIN, Judge, dissenting.
I respectfully dissent from the foregoing majority opinion's primary finding that LSA-C.Cr.P. art. 578 prescription was running while William J. Kraft was incarcerated in Texas. There is no doubt from the facts and circumstances of this case that Kraft was not at his usual place of abode in Louisiana and very little doubt that he fled this state to avoid detection, apprehension and prosecution.
Further, even if extradition had been requested, it is inconceivable that Texas authorities would have released Kraft from a 25-year hard labor sentence to be returned to Louisiana to face a less serious weapons charge.
*317 When Kraft was returned to this state and his probation revoked in 1982, Jefferson Parish officials were not aware of these happenings. Only when Kraft was freed on June 6, 1984 could the prescriptive clock start to run.
Kraft's other assignments of error are likewise without merit, as follows:

ASSIGNMENT NO. 2
Kraft contends his pistol should have been suppressed as evidence because it was seized in the course of an illegal search by security guards.
The record indicates these facts:
Kraft was attempting to use a stolen credit card at Lakeside Shopping Center when he saw three Lakeside security officers approaching. Kraft fled, but the security officers gave chase and caught appellant. The security officers searched Kraft and found a .22 caliber pistol, which was turned over to a Jefferson Parish deputy when he arrived at the scene.
Appellant cites LSA-C.Cr.P. art. 215, but this is the shoplifting article and inapplicable here. Kraft was trying to make unauthorized use of a credit card, a felony under LSA-R.S. 14:67.3; therefore the Lakeside security officers, although not regular policemen, had the right as citizens to apprehend Kraft and conduct a search for weapons.
The Fourth Amendment to the United States Constitution protects individuals from unreasonable governmental actions and does not protect against private trespass. The Lakeside security officers were not subject to the Fourth Amendment limitations. See State v. Gentry, 462 So.2d 624 (La.1985).
The trial judge did not err in denying Kraft's Motion to Suppress.

ASSIGNMENT NO. 3
Following denial of the pretrial motions on October 21, 1985, Kraft's counsel announced her intention to take writs to the Fifth Circuit Court of Appeal. The trial judge, nevertheless, denied a request for a continuance and ordered Kraft's trial to begin that afternoon.
Kraft's counsel did take writs on October 21st, which were denied by the Fifth Circuit. The trial judge's discretion, in not granting a continuance, was not abused, this Court said in denying writs.
I find this assignment of error without substance. Judicial efficiency and a trial judge's wide discretion demand that appellate courts afford great deference to pretrial decisions on admissibility unless it becomes apparent, in the light of the subsequent trial record, that a determination was patently erroneous and produced an unjust result. See State v. Humphrey, 412 So.2d 507 (La.1981).
On appeal, Kraft again litigated his motions, unsuccessfully. I cannot say that the trial judge's rulings were wrong or that they produced an unfair consequence. The denials forced Kraft to either go to trial or plead guilty, a choice defendants in criminal cases often have to make. He chose to enter a plea and appeal under State v. Crosby, supra.

ASSIGNMENT NO. 4
This assignment of error states that a 10-year sentence was excessive. When passing sentence, the trial judge noted that Kraft had "... already been convicted of other felonies."
A presentence report was placed in and became part of the record. It showed, among other things, the simple burglary conviction, for which Kraft received a seven-year sentence, and arrests in 1977 for forged prescriptions and in 1978 for possession of dilaudid and contributing to the delinquency of a juvenile. The report does not contain dispositions of the 1977 and 1978 charges.
The report further reveals that Kraft is still on active parole for the Texas crimes, the parole being supervised by the Amite office of the Louisiana Department of Corrections, Division of Probation and Parole. Apparently, from the report, Kraft was arrested in Baton Rouge for forgery (45 *318 counts), felony theft (27 counts) and misdemeanor theft (18 counts), and is now being held in East Baton Rouge Parish prison on these charges as well as on a detainer from Texas for parole violation. Kraft's Texas parole extends to July 20, 1998.
As a juvenile, Kraft was placed on probation for felony theft. He violated this probation and he was committed to the Louisiana Training Institute.
I am unaware of any factors that would mitigate in Kraft's favor. I would affirm the actions of the trial judge and affirm appellant's 10-year sentence.
NOTES
[1] Section (3) was added by Acts 1984, No. 671, section 1. It provides a further means of interruption as follows: "The defendant fails to appear at any proceeding pursuant to actual notice; proof of which appears of record."