872 So.2d 1052 (2004)
STATE of Louisiana
v.
Thomas BOBO.
No. 2003-KK-2362.
Supreme Court of Louisiana.
April 30, 2004.
Rehearing Denied June 4, 2004.
*1053 Dwight M. Doskey, for Applicant.
Charles C. Foti, Jr., Attorney General, Jerry L. Jones, District Attorney, George D. Ross, Assistant District Attorney, for Respondent.
KIMBALL, Justice.
In this extradition case, we are called on to determine whether a defendant's incarceration in another state interrupts the two-year prescriptive period provided by La.C.Cr.P. art. 578(2) for prosecution of felony charges in this state. Specifically, we must decide whether the State's failure to bring the defendant to trial within two years from the date of his indictment, when the defendant was incarcerated in Texas at the time of his Louisiana indictment and after the proper execution of extradition papers by Texas authorities, *1054 was because his "presence could not be obtained by legal process" or "due to events beyond its control," as provided for by La.C.Cr.P. art. 579. For the reasons that follow, we hold that the State has not met its burden of proving that an interruption of the applicable prescriptive period occurred.

FACTS AND PROCEDURAL HISTORY
On December 2, 1998, the grand jury in Ouachita Parish indicted the defendant, Thomas Bobo, on four counts of distribution of heroin, one count of attempted distribution of heroin, and one count of conspiracy to distribute heroin. According to the affidavit in support of a warrant issued for Bobo's arrest on October 12, 1998, the charges stemmed from sales of heroin allegedly made by Bobo from his home in Stafford, Texas, in September and October 1998, by mail to a cooperating individual in Ouachita Parish. Bobo's arrest in Texas followed, and in June 1999 he began serving a sentence in the Texas penitentiary at Huntsville after conviction for possession of heroin arising out of the same series of transactions involved in the Ouachita Parish prosecution.
In early April 2000, approximately 16 months after Bobo's indictment in Ouachita Parish, but still within the two-year time limit for trial, the District Attorney's Office in Ouachita Parish formally requested Governor Mike Foster to issue a demand for Bobo's extradition from Texas.[1] The demand and supporting documents were prepared by the Louisiana Governor's Office on May 5, 2000, and were sent to Texas at the end of the month. Among the documents was an agreement for re-extradition of Bobo at the request of the executive authority of Texas in the event that Texas acceded to the demand for Bobo's extradition. On June 8, 2000, then-Governor George W. Bush signed a warrant for Bobo's arrest and extradition to Louisiana. On June 14, 2000, the Extradition Coordinator for the Texas Governor's Office informed the prison authorities at Huntsville, where Bobo remained confined, that the extradition warrant had issued and they were to execute it immediately. The letter explicitly instructed Huntsville to advise the Ouachita Parish Sheriff's Office "[w]hen all statutory requirements have been complied with and the defendant is ready to return to the demanding state ..." On June 26, 2000, Huntsville informed the Ouachita Parish Sheriff's Office by letter that it would be "notified prior to the release of this subject so that you may have an officer here to take him/ her into custody." The letter, on a preprinted form, provided information with regard to Bobo's full term date and parole eligibility status, but made no mention of the extradition proceedings underway at the direction of the Texas Governor's Office.
On July 28, 2000, having refused to waive extradition proceedings, Bobo appeared in the district court of Walker County, Texas to challenge the authority of Louisiana over him. During those proceedings, Bobo's counsel conceded that the necessary paperwork for extradition appeared in order, but argued that his conviction in Texas for a crime arising out of the same series of transactions involved in Ouachita Parish prosecution collaterally estopped Louisiana from taking Bobo into custody. At the conclusion of the hearing, the court rejected Bobo's argument and ordered him remanded to Louisiana. See Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (dual sovereignty doctrine permits successive prosecution *1055 of defendant by two states for the same conduct). On October 12, 2000, that judgment was affirmed. Ex Parte Bobo, XX-XX-XXXXXX (Tex.App. 14th Cir.10/12/02). However, Bobo was not returned to Louisiana until November 4, 2002, after he had completed his sentence in Texas at the end of October of that year and he waived extradition to Louisiana.
On December 2, 2000, four years to the date on which he was indicted, and following his arraignment on the pending indictment, Bobo filed a motion to quash, in which he asserted that the prosecution against him had prescribed. On March 13, 2002, at the hearing conducted on the motion, the trial court took no testimony, but filed various documents relating to the prescription issue into the record. On May 5, 2003, the trial court issued a written judgment denying Bobo's motion on grounds that the State's initial effort to extradite him from Texas was sufficient to interrupt prescription until October 2002, because "[i]t was reasonable for this State, in reliance upon the assertion that it would be notified when the State of Texas was ready to release Defendant, to then wait until such notification was received ... [T]he limitation period began to run anew when the Ouachita Parish Sheriff was notified by Texas authorities that Defendant would be released from custody of the State of Texas, thereby removing the cause of the interruption." Thus, the trial court agreed with the position of the State taken throughout these proceedings that having initiated an extradition demand through the Louisiana Governor's Office to the executive authority of Texas, it had no affirmative duty to inform itself of the outcome of those proceedings or to take any further action until Huntsville provided actual notice that Bobo was set for release from the penitentiary after serving his sentence there.
Following the ruling of the trial court, Bobo timely filed an application for supervisory writs to the Louisiana Second Circuit Court of Appeal, which, relying on State v. Beverly, 448 So.2d 792 (La.App. 2 Cir.1984), declined to exercise its supervisory jurisdiction. State v. Bobo, 37,880, 37,881 (La.App. 2 Cir. 7/13/03), ___ So.2d ____.
On application of the defendant, we granted certiorari to review the correctness of the lower courts' decisions that the State had exercised due diligence in attempting to try the accused timely. State v. Bobo, 03-2362 (La.10/17/03), 855 So.2d 745.

LAW AND DISCUSSION
The rule, repeatedly upheld by this court, is that once a defendant in a felony case in Louisiana shows that his trial was not commenced within two years after the date of the institution of the prosecution, the State "bears the heavy burden of showing that it is excused from trying the accused on a charge later than the period mandated by [La.C.Cr.P. art.] 578."[2]State v. Groth, 483 So.2d 596, 599 (La. 1986); State v. Amarena, 426 So.2d 613, 617 (La.1983); State v. Devito, 391 So.2d 813, 816 (La.1980) (on reh'g). This heavy burden "requires the State to exercise due diligence in discovering the whereabouts of *1056 the defendant as well as taking appropriate steps to secure his presence for trial once it has found him." State v. Chadbourne, 98-1998, p. 1 (La.1/8/99), 728 So.2d 832. The State may discharge this burden by demonstrating that a ground for interruption exists under La.C.Cr.P. art. 579, which provides, in pertinent part:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state;
* * *
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
Under Article 579, then, because the Ouachita Parish grand jury indicted Bobo on December 2, 1998, the State had two years from that date to bring Bobo to trial, unless prescription was interrupted under Subsection (A)(1) or (2).
The State contends that Bobo was a "de facto fugitive" for the purposes of La.C.Cr.P. art. 579(A)(1). The burden of proving that the defendant's purpose in remaining outside of the State was to avoid detection, apprehension or prosecution, and thereby interrupted the two year prescription under La.C.Cr.P. art. 578, rests with the State. Amarena, 426 So.2d at 617 (citing State v. Campbell, 404 So.2d 956, 959 (La.1981)). This burden is a heavy one in which the record must "clearly establish that the purpose of the defendant's absence was to avoid detection, apprehension or prosecution." Id. (citing State v. Williams, 414 So.2d 767, 768-69 (La.1982)).
The record in this case establishes that Bobo was outside the State when the Ouachita Parish grand jurors indicted him because he resided in Texas, not because he had sought refuge from detection and prosecution for his alleged crimes in Louisiana. Further, the record contains no evidence contradicting Bobo's statement in the Walker County District Court July 28, 2000 extradition hearing that he "never set foot" in Louisiana. Thus, it seems the State has failed to carry its heavy burden to show that Bobo was a fugitive for purposes of interrupting the time limits on trial in Louisiana because "[t]o make a person a fugitive from justice it must appear that he was within the State when the crime charged is alleged to have been committed." State v. Stanton, 209 La. 457, 468, 24 So.2d 819, 822 (1946).[3]
*1057 Nevertheless, even assuming that merely by residing at his usual place of abode in Texas, Bobo, because he was "outside the state" when indicted, was a fugitive for purposes of La.C.Cr.P. art. 579(A)(1), it is undisputed that a time came when the State learned of his whereabouts and had within its power the ability to obtain the custody of him. Once the State located Bobo in custody in Texas, it had the affirmative duty to take steps to secure his presence in Louisiana for trial. See Amarena, 426 So.2d at 618 ("Any interruption of the period of limitation which existed under La.C.Cr.P. art. 579(A)(1) ceased when the State learned of the incarceration, location and availability of the defendant, and the two year prescriptive period began to run anew from that time."); Devito, 391 So.2d at 816 ("After receiving notice of the defendant's whereabouts [in jail], the State was no longer unable to act in apprehending the defendant or unable to obtain his presence for trial by legal process ... it necessarily follows that any interruption of the period of limitation which existed under Article 579(1) or (2) ceased when the State regained its capacity to act.").
In fact, the State, fully aware of Bobo's whereabouts, initiated extradition proceedings through the Louisiana Governor's Office on May 5, 2000. The State contends that because Bobo was incarcerated in Texas, under La.C.Cr.P. art. 579(A)(2), it satisfied its burden of due diligence in attempting to try the accused timely by initiating extradition proceedings and that it therefore had the right to rely on the form letter from the Huntsville prison authorities that it would be informed of Bobo's release on his Texas sentence.
By its plain terms, Article 579(A)(2) provides a cause of interruption only when the State cannot secure the person by legal process or by other cause beyond its control. The State's argument that Bobo's incarceration in Texas impeded its ability to try him timely here seemingly seeks to reprise this court's holding in State v. Dupree, 256 La. 146, 235 So.2d 408 (1970), overruled, Devito, 391 So.2d at 816. Dupree held that interruption of time limits on trial, which began when the defendant escaped to Mississippi,[4] did not end with his incarceration in that state for another offense and continued until his release from jail on that sentence. However, as the holdings in Amarena, and Devito show, this Court no longer subscribes to its decision in Dupree.
In this case, the prosecuting authority in Ouachita Parish knew or should have known that Texas and Louisiana participate in the Uniform Criminal Extradition Act under which the governor of a participating state, in his or her discretion, may either surrender the accused to the demanding state, or hold the accused until tried and charged, or convicted and punished in the asylum state. See La.C.Cr.P. art. 272, providing:
If a criminal prosecution against the demanded person is pending under the laws of this state, or if he has been convicted in a court of this state but not completely satisfied his sentence, the governor may, in his discretion, surrender him on demand of the executive authority of the other state. The surrender must be pursuant to a re-extradition agreement ...
Cf. Tex.Code Crim. Proc. Art. 51.13, § 19, providing:
If a criminal prosecution instituted against such person under the laws of this State and is still pending, the Governor, *1058 in his discretion, either may surrender him on demand of the Executive Authority of another State or hold him until he has been tried and discharged or convicted and punished in this State.
Here, Governor Foster complied with the Uniform Criminal Extradition Act by appending the requisite re-extradition agreement to the State's extradition demand and, to protect its own interests, the State could not reasonably rely on the form letter sent by the prison authorities at Huntsville as the response of the governing executive authority in Texas to Louisiana's formal demand through its chief executive for the surrender of Bobo. In other words, the State had a duty under Article 579 not only to initiate extradition proceedings in the present case, but also to inform itself of the outcome of the proceedings in the event, as happened, that Texas made the demanded person available to the custody of Louisiana officials. Although Bobo refused to waive extradition after Texas Governor Bush signed the extradition order, by October 12, 2000, when the Texas appellate court affirmed the judgment of the district court ordering his surrender to Louisiana officials, he was no longer beyond the legal processes of the State. Thus, prescription once more began to run against the State on October 12, 2000 when the Texas appellate court affirmed the decision of the district court under the extant extradition warrant issued by the Texas Governor's Office. This prescriptive period was not thereafter interrupted for more than two years and the arraignment of defendant on December 2, 2002 clearly falls beyond this prescriptive period.
It appears from the record that a breakdown in communication occurred between the Texas and Louisiana authorities when the officials at Huntsville failed to follow the express instructions of the Extradition coordinator in the Governor's Office and did not notify the Ouachita Parish Sheriff's Office that extradition proceedings had been completed and that Bobo was available for transport to Louisiana although he was still serving his sentence in Texas. Nevertheless, the fact remains that by failing to make any inquiries regarding the extradition proceedings, the State neglected to take reasonable steps to apprise itself that any cause of interruption as a matter of Article 579(A)(1) or (2) had ceased to exist as of October 12, 2000, and that the two-year period for bringing Bobo to trial in Louisiana for his alleged crimes had begun to run anew from that date. The State's attempt to rely on the form letter sent by the officials at Hunstville, which makes no reference to the extradition proceedings, as an interruption of prescription under Article 579(A)(1) or (2) is unavailing when in the face of a properly executed warrant of extradition signed by the Texas Governor, a final judgment by the Texas courts on the issue, and this court's overruling of Dupree and its progeny. Furthermore, problems encountered by the State in extradition or those caused by its own mismanagement cannot be charged to the defendant. Devito, 391 So.2d at 816. As a consequence, the State allowed its prosecution to prescribe while Bobo finished serving his sentence in Texas.
Additionally, this matter is distinguishable from the case in Beverly upon which the State and the lower courts rely. In Beverly, it appeared that the California authorities had declined to extradite defendant until the completion of his sentence. 448 So.2d at 793.[5] In this case, when *1059 Governor Bush signed the extradition warrant, Texas made Bobo available to Louisiana although he had not yet finished serving his sentence in the penitentiary at Huntsville.
Therefore, the trial court erred in denying Bobo's motion to quash the present prosecution filed approximately two months after the period of limitation expired. Although Bobo has shown no prejudice as the result of his continued incarceration on his underlying sentence in Texas for two years after the appellate courts of that state sanctioned his surrender to Louisiana, statutory periods of limitation on the prosecution of cases offer the primary means of enforcing the Sixth Amendment right to a speedy trial "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

CONCLUSION
Thus, the State's failure to bring Bobo to trial within two years from the date of his indictment was not because his presence could not be obtained by legal process nor due to events beyond its control. Accordingly, we hold that the State has not met its burden of proving that an interruption of the prescriptive period contained in La.C.Cr.P. art. 578 has occurred.

DECREE
For the foregoing reasons, the judgment of the trial court is therefore reversed, the motion to quash is ordered granted, and defendant is discharged from custody on the present charges.
REVERSED.
TRAYlOR, J., dissents and assigns reasons.
KNOLL, J., dissents for reasons assigned by Justice Traylor.
VICTORY, J., dissents and assigns reasons.
WEIMER, J., additionally concurs with reasons.
TRAYLOR, J., dissenting.
I disagree with the majority. In my opinion, the State reasonably relied on the June 2000 letter from the Huntsville penitentiary, which advised the Ouachita Parish Sheriff's Office that it would be "notified prior to the release of this subject so that you may have an officer here to take *1060 him/her into custody." Accordingly, I would find that the June 2000 letter interrupted the two-year prescriptive period because the State reasonably believed that the defendant's "presence at trial [could] not be obtained by legal process," as provided for by La.C.Cr.P.art. 579(A)(2).
KNOLL, J., dissenting.
I dissent for the reasons assigned by Justice Traylor.
VICTORY J., dissenting.
As the majority recognizes, "the officials at Huntsville failed to follow express instructions of the Extradition coordinator in the Governor's Office and did not notify the Ouachita Parish Sheriff's Office that extradition proceedings had been completed and that Bobo was available for transport to Louisiana although he was still serving his sentence in Texas." (opinion, p. 1058) The June 26, 2000 letter from Huntsville to the Ouachita Parish Sheriff's Office clearly led Ouachita officials to believe they would be notified when the defendant was available for return to Louisiana.
Further, although Texas later followed through with extradition proceedings, Ouachita officials were not notified by Texas. Under these circumstances, the state met its burden under La.C.Cr.P. art. 579(A)(2).
WEIMER, J., additionally concurring.
With all due respect to the dissenting justices, I cannot allow to go unchallenged the statement that the State was somehow reasonably misled. The form letter issued by Texas prison authorities could not reasonably cause the State to believe that the State of Texas had declined to extradite defendant until the completion of his sentence. This form letter does not lift the State's "heavy burden" of showing that it is excused from trying the accused within the two year period mandated by law.
The form letter on which the dissenting justices rely is a pre-printed letter which simply acknowledges the awareness of the Texas prison authorities that defendant is wanted in Louisiana and that the Ouachita Sheriff's Office will be notified prior to his release. Absolutely no mention is made of the extradition proceedings. This "acknowledgment" letter, which lists defendant's name, identifying number, and full-term imprisonment date, in no way indicates that the State could not take defendant into custody at an earlier date. As such, the letter states the obvious: the sheriff's office can take him into custody when the defendant completes his sentence. Nothing in the letter indicates he cannot be taken into custody at an earlier date. Additionally, the letter is addressed to the sheriff's office, not to the district attorney.
Considering the formal request for extradition signed by the governor of Louisiana, the properly executed warrant of extradition signed by the Texas governor, and the final judgment of a Texas court ordering extradition of the defendant, it cannot reasonably be argued that the "form" letter issued from the Texas authorities to the Ouachita Parish Sheriff's Office misled Louisiana authorities into believing that the State of Texas had declined to extradite defendant until the completion of his sentence. The State, having initiated the extradition process, had a duty to follow the process to its conclusion. Nothing in the record indicates the State of Louisiana was prevented from determining the extradition proceeding had concluded with a court order of extradition.
The dissenting justices' view that the form letter, which makes no mention of the extradition process, conferred some reasonable *1061 basis for the State's complete abdication of its responsibility to follow up on action the State initiated is not supported by the record in this case.
NOTES
[1] Louisiana and Texas are two of 46 states that participate in the Uniform Criminal Extradition Act.
[2] La.C.Cr.P. art. 578 provides:

Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
(3) In misdemeanor cases after one year from the date of institution of the prosecution.
The offense charged shall determine the applicable limitation.
[3] The rationale of the Stanton case is favorably cited in the Official Revision Comment to La.C.Cr.P. art. 575, which incorporates the identical ground for interrupting the time limits on instituting prosecution for a criminal offense after its commission:

A similar provision has been apart of every Louisiana statute of limitations since 1805... Every provision has employed both the "abscond" concept and the "fleeing from justice" concept. The word "abscond" includes the idea of concealment without flight; on the other hand, "fleeing from justice" requires there be movement out of the jurisdiction ...
* * *
[T]o establish that a person is a fugitive it must first be shown that he was within the jurisdiction at the time the offense occurred and thereafter moved out [citing Stanton ]. However, mere absence is not enough. The status of being a fugitive also requires an intent to avoid prosecution and punishment for a particular offense. If the intent is bona fide and for legitimate purposes, the person is not a fugitive.
[4] Mississippi is one of only 4 states that does not participate in the Uniform Criminal Extradition Act.
[5] In Beverly, a case also arising out of the Ouachita Parish's prosecutor's office, the second circuit affirmed the trial court's judgment denying the defendant's motion to quash based on the State's failure to bring him to trial within two years of the institution of the prosecution against him for simply burglary of an inhabited dwelling because California declined to extradite him. 448 So.2d at 793-94. However, Beverly sought and obtained federal habeas corpus relief on his conviction and sentence on the grounds that the second circuit's decision rested on a faulty factual premise and, as subsequent testimony in the federal proceedings made clear, California in fact had not refused Louisiana's initial extradition demand. Beverly v. Butler, 87-11345-M (W.D.La.1990), ___ F.Supp.2d ____.

The State argues here that federal relief in Beverly ultimately rested on a finding that the State did not timely file its extradition request with California. However, it appears that the prescription issue arose in large part because "[n]o one in the State of California ever notified any of the Louisiana authorities as to whether Beverly's extradition was approved or rejected, and [the Ouachita Parish District Attorney's Office] never made any effort of any kind to follow up with California authorities to determine the status of the extradition." Beverly, 87-11345-M at p. 5, ___ F.Supp.2d at ____.
This court expresses no opinion as to the merits of either the second circuit's decision in Beverly or the result of the federal habeas proceedings in Beverly v. Butler. In the present case, however, no ambiguity exists as to Texas' response to Louisiana's demand for Bobo's extradition. While it appears from this case, and from Beverly, that failures occurred in the State's internal operating procedures for monitoring its extradition requests to their conclusion, "[t]he court system cannot excuse itself from affording an accused a trial within the delay required by law simply by relying on internal operating procedures which result in non-compliance with the statutory mandate." Devito, 391 So.2d at 816.