414 So.2d 767 (1982)
STATE of Louisiana
v.
Wiley Young WILLIAMS.
No. 81-K-3153.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
James E. Franklin, Jr., Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Herman L. Lawson, Asst. Dist. Attys., for plaintiff-respondent.
DIXON, Chief Justice.
On February 25, 1976 Wiley Young Williams and Robert Lee Jordan[1] were indicted *768 by the DeSoto Parish Grand Jury for armed robbery. (R.S. 14:64). They allegedly robbed C. B. Yarbrough, doing business as Lee Martin's Men's Store in Mansfield, Louisiana, on January 14, 1976 while armed with a dangerous weapon. Although an arrest warrant was issued in DeSoto Parish in 1976, Williams was not arrested until June 11, 1981. Williams filed a motion to quash the indictment, based on expiration of the time limitation in C.Cr.P. 578, since the state was attempting to begin trial more than two years after the institution of prosecution. The trial court denied the motion. We granted defendant's application for writ of certiorari, and reverse.
Defendant alleged in his motion to quash that he was a resident of San Augustine, Texas at the time of his indictment. The record consists of a stipulation made by the prosecution and the defense, but it contains no reference to defendant's 1976 residence except for the state's denial of knowledge of defendant's residence at that time. The stipulation indicates defendant was arrested in 1976 in San Antonio, Texas, but that DeSoto Parish authorities were unaware of this detention. Defendant was arrested in Oklahoma City in 1977. The State of Louisiana attempted to extradite defendant, but failed to do so.
A letter dated February 2, 1977 from the Oklahoma City sheriff's office informed the DeSoto sheriff's office that defendant was in custody, but that the Governor's extradition warrant was needed by March 1, 1977 for an extradition hearing; that hearing was continued until May 1, 1977 allowing the state a longer period for extradition. The DeSoto Parish district attorney wrote to the Oklahoma City sheriff on February 10, 1977 stating that necessary paperwork for Williams' extradition had been sent to the Attorney General of Louisiana. On March 2, 1977 the district attorney mailed copies of the 1976 arrest warrants that had been issued in DeSoto Parish to the Oklahoma authorities. A letter of May 23, 1977 from the DeSoto Parish district attorney's office to an office of the Louisiana Attorney General indicates that the Oklahoma City authorities had not received the Governor's extradition warrant before expiration of the time that defendant could be held on the fugitive complaint.[2] The district attorney stated that the Attorney General should proceed with the extradition because the defendant was still in the vicinity of Oklahoma City. On June 24, 1977 the Oklahoma Department of Corrections sent a letter to the Oklahoma City sheriff enclosing the Louisiana Governor's warrant for defendant. The record contains no further correspondence between the Louisiana and Oklahoma authorities.
The stipulation shows that defendant remained in Oklahoma City for another three or four years working for the same employer, a cement company, although the state in argument denied knowledge of defendant's whereabouts. Defendant returned to Mansfield at the end of 1980, and in 1981 was arrested on a charge of disturbing the peace; that arrest led to the discovery of outstanding arrest warrants on the armed robbery charge.
The two year period for the commencement of trial has obviously been exceeded in the span between February 25, 1976 and June 11, 1981, the time of defendant's arrest. Unless there was an interruption or suspension of the prescriptive period as provided in C.Cr.P. 579 and 580, the indictment should have been dismissed under C.Cr.P. 581. The second article of the Code of Criminal Procedure provides:
"The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay."
This court has consistently held that the state bears a "... heavy burden of showing that it is excused from trying an accused on *769 a charge later than the period mandated by Article 578...." State v. Driever, 347 So.2d 1132, 1133 (La.1977). See also State v. Guidry, 395 So.2d 764 (La.1981) and State v. Devito, 391 So.2d 813 (La.1980). In Devito we held that the state's failure to extradite the defendant within the period mandated by Article 578, due to delays encountered by the state in extradition, could not be imputed to the defendant. In Guidry the state knew the whereabouts of defendant and had the opportunity to act, but failed to do so within the allotted time. Consequently, the indictment against Guidry was dismissed.
In this case, Williams was released from jail in Oklahoma City because the extradition papers were not timely filed in Oklahoma despite a two month continuance of the extradition hearing. Defendant remained in Oklahoma City for more than three years following his release. At the hearing on defendant's motion to quash, the district attorney denied knowledge of defendant's whereabouts after his release from jail. However, the record reveals that the DeSoto Parish district attorney was aware that defendant was still in the Oklahoma City area after his release. In a letter dated May 23, 1977 from the district attorney to the Louisiana Attorney General, the district attorney advised that office that the defendant was still in the Oklahoma City area.
The state had ample time to locate defendant through the authorities in Oklahoma and have him rearrested for extradition. The evidence produced at the motion to quash showed that the State of Louisiana failed to pursue the extradition after learning that defendant had been released. The state never attempted to establish that Louisiana was defendant's usual place of abode. Absent a showing of cause beyond the state's control that would interrupt prescription, the two year time limit for a noncapital felony continued to run. The state has failed to carry its burden of showing that limitations on trial established in C.Cr.P. 578 have been interrupted or suspended. See State v. Guidry, supra; State v. Devito, supra; State v. Driever, supra. Defendant's motion to quash the indictment should have been granted.
The ruling of the trial court on the motion to quash the indictment is reversed. The indictment is dismissed, and the defendant is discharged.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
La.Code Crim.P. art. 579 provides:
The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
In my view, defendant either fled from the state or was outside of the state with the purpose to avoid detection, apprehension, or prosecution or could not be tried because his presence for trial, at least part of the time, could not be obtained by legal process. In either case, there was an interruption under art. 579 of the time limitation established by art. 578(2). Moreover, I consider that State v. DeVito, 391 So.2d 813 (La.1980), should be overruled. Accordingly, I respectfully dissent.
NOTES
[1] The defense notes in brief that no further proceedings were had against Jordan following a preliminary hearing in 1976. The state does not dispute this allegation.
[2] The record is unclear, but it appears that Williams was released by Oklahoma City authorities in early May, 1977.