443 So.2d 639 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Roscoe Randolph JONES, Defendant-Appellant.
No. K83-274.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*640 Mark A. Delphin, Delphin & Granger, Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOUCET, LaBORDE and KNOLL, JJ.
DOUCET, Judge.
Defendant, Roscoe Randolph Jones, was charged by bill of information on January 10, 1979, with simple burglary, a violation of LSA-R.S. 14:62. On November 19, 1982, he filed a motion to quash the bill of information. The motion was heard and denied by the trial judge. From that ruling, the defendant sought a writ of certiorari which was granted and made peremptory so as to afford the State adequate opportunity to respond. No response was received. We now grant the Motion to Quash.
The issues presented are:
(1) Whether the trial judge erred in finding that defendant failed to prove that he had made a valid plea bargain with Assistant District Attorney Evelyn Oubre.
(2) Whether the trial judge erred by finding that the state was excused from bringing the defendant to trial within the time period mandated by LSA-C. Cr.P. art. 578.
The following facts were largely adduced from defendant's testimony at the hearing on the motion to quash: On December 23, 1978, defendant was arrested for burglarizing a Lake Charles residence. He was formally charged by bill of information on January 10, 1979, with one count of simple burglary. Defendant testified that on May 2, 1979, he was summoned from his home to the office of then Assistant District Attorney Evelyn Oubre, to discuss a plea bargain. He stated that Ms. Oubre offered to dismiss the burglary charge if he would cooperate with her on pending investigations as an informant. According to defendant, Ms. Oubre warned him that if he chose not to cooperate, she would make sure that he received the maximum possible sentence for simple burglary.
During the two months that followed the meeting, defendant claims to have aided local, city and parish law enforcement officials on a number of cases. Testimony from law enforcement officials who worked on those cases support defendant's story. The most significant case that defendant was involved with was the armed robbery of the Continental Trailways Station. Defendant took part in the robbery as an informer and tipped off the sheriff's office before the robbery, during and after. Charges were brought against defendant and the other three men involved, but were later dismissed after it was discovered that all four men had been working for various law enforcement agencies.
Defendant testified that word got out onto the streets that he was cooperating *641 with the police and consequently several threats were made against his life. He stated that after being severely beaten he sought out Ms. Oubre for help. Ms. Oubre, he said, expressed her sorrow over the incident and told him that she would drop the burglary charge that was pending against him. He claimed that Ms. Oubre told him he was free to leave the state. According to defendant, the only other person that witnessed this conversation was former Sheriff's Deputy McDaniel, who is now incapacitated as the result of a stroke.
Around mid-June of 1979, defendant moved to Long Beach, California, where he found employment as a welder. He claimed to have made no effort to conceal his presence from Louisiana authorities and in fact obtained a California driver's license, and paid state and federal taxes using his correct name and social security number.
On January 27, 1980, he was arrested by California authorities for aggravated assault and sentenced to one year in jail and summary probation. Defendant remained in jail for eight months before being released on a fugitive bond on September 26, 1980. During his sojourn in the Los Angeles county jail, defendant learned that Calcasieu Parish authorities were seeking his extradition and had placed a detainer on him. Defendant contacted his former defense counsel, Judge W. Ellis Bond, and told him that he was unaware of any criminal charges pending against him in Calcasieu Parish. He requested that Judge Bond check on the matter. The judge conducted a cursory investigation, (which included a call to the District Attorney's office), and wrote back that as of August 1980, there were no warrants outstanding or charges pending against defendant in Calcasieu Parish.
According to defendant, during the months immediately following his release from jail, a California court continued his extradition hearing three times (one month each time) because Louisiana had not sent in all of the necessary paper work. Defendant said that the California judge said she would dismiss the proceedings if Louisiana did not follow through with the matter by the end of the third continuance. Defendant claimed that was the last he heard about the entire affair.
Defendant remained in the Los Angeles area and sometime during 1981 was arrested once again by California authorities for violating the conditions of his probation. He was initially sent to a transient prison, Chino, and then sent on to another prison after it was discovered that no detainers had been placed on him. He remained in a California prison until his release on March 27, 1982.
Apparently fed up with California hospitality, defendant moved to Houston, Texas, shortly after his release from prison. He found work with the Hughes Tool Company and claimed that he obtained a Texas driver's license using his correct name. He was married during his stay in Texas and stated that he used his correct name on the marriage application.
During the summer of 1982, defendant returned to Lake Charles for several visits. He testified that during these visitations, he made no effort to hide from law enforcement authorities. In fact, defendant contended that on a couple of occasions he frequented a local bar and conversed with police officers.[1] He was arrested while performing chef duties at a local church barbeque in the late summer of 1982.
With regard to the relator's claim that the plea bargain precludes the present prosecution, we note that LSA-R.S. 15:432 lists a number of legal presumptions, among them being:
[T]hat evidence under the control of a party and not produced by him was not produced because it would not have aided him; that witnesses have told the truth.
*642 Defendant testified that he entered into a plea bargain with former Assistant District Attorney Evelyn Oubre yet the State failed to produce Ms. Oubre. On the other hand, the defendant's story was supported somewhat by the testimony of several law enforcement officials. Several present and former law enforcement officials testified that defendant aided them as an informant with several arrests and one officer stated that he had discussed defendant's status with Ms. Oubre and was told that any assistance given by defendant would be taken into consideration regarding charges pending against him.
To rebut defendant's testimony and any inferences raised by the officers' testimony, the state called as witnesses Assistant District Attorneys George Perez and Charles Richard. They testified that it was office policy to clear any plea bargains with District Attorney Leonard Knapp or Mr. Richard; that Ms. Oubre never mentioned anything about a plea bargain with defendant, and to their knowledge it had never taken place. However, both men admitted that it was possible that Ms. Oubre had made an agreement with defendant without informing anyone else.
The best rebuttal evidence that the state could have produced was Ms. Oubre herself, who is now working in private practice. She and defendant are the only persons who actually know what agreement, if any, transpired between them. Although the state indicated that Ms. Oubre had been subpoenaed to testify, she never appeared at the hearing, even though the hearing was continued for one week so that her presence could be obtained. The state offered no explanation for Ms. Oubre's absence. By operation of LSA-R.S. 15:432, it is presumed that Ms. Oubre's testimony would not have aided the state's case against defendant.
Even if defendant's testimony were deemed self-serving, its credibility was enhanced by the testimony of law enforcement officials. The defendant established by a preponderance of evidence the existence of a plea bargain the terms of which precluded the state from instituting prosecution against him. United States v. Millet, 559 F.2d 253 (U.S. 5th Cir.1977).
The defendant's argument that the state failed to timely bring him to trial also has merit. He contends that the state did not carry its burden of demonstrating that the prescriptive period established by LSA-C.Cr.P. art. 578 was suspended or interrupted. C.Cr.P. art. 578 establishes the general rule that no trial shall be commenced in felony cases (other than capital crimes) after two years from the date of institution of the prosecution. Institution of the prosecution is either the filing of the bill of information or the return of a grand jury indictment. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
C.Cr.P. art. 579 states that the prescriptive period established by art. 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
The periods of limitation established by Art. 578 shall commence to run anew from the date the cause of interruption no longer exists.
The Louisiana Supreme Court has held that in those instances where more than two years have elapsed since prosecution was instituted against defendant and he has not been tried, the state falls under a heavy burden to demonstrate an interruption or suspension of prescription. State v. Williams, 414 So.2d 767 (La.1981); State v. Devito, 391 So.2d 813 (La.1980).
Williams, supra, involved a case factually similar to the one at hand. The defendant was indicted by a grand jury for armed robbery in February of 1976 but was not arrested until June of 1981. He filed a *643 motion to quash the indictment based on the expiration of the C.Cr.P. art. 578 two year time limit. At the hearing on the motion, testimony revealed that defendant was a Texas resident, and had been arrested in Oklahoma City in 1977. Louisiana authorities made an attempt to extradite him but failed to timely send the required governor's extradition warrant. Defendant was released by the Oklahoma authorities and he remained in Oklahoma City where he worked for three years. His arrest for disturbing the peace in Mansfield led to the discovery of the outstanding warrant issued for his arrest in 1976. In ruling that the state failed to establish that the two year prescriptive period had been interrupted, the Supreme Court noted that the DeSoto Parish District Attorney knew that defendant remained in the Oklahoma City area after his release but failed to pursue extradition.
In State v. Devito, supra, the Jefferson District Attorney's office filed a bill of information against defendant after learning that he was incarcerated in a New Jersey jail. However, the state did not bring defendant to trial until over two years later. In ruling that prescription had run, the court noted that the delays were wholly attributable to the state's negligence. In its first attempt to extradite defendant, Jefferson Parish authorities sent incomplete documents. They then allowed a considerable amount of time to lapse before they made any effort to pursue the matter. On rehearing the Court held:
"The state has failed to carry its heavy burden of showing that it was unable to act or prevented from acting to obtain defendant's presence for trial after it received notice that defendant was incarcerated in New Jersey and susceptible to extradition. The delays and problems encountered by the state in extradition, or those caused by its mismanagement, cannot be charged to the defendant."
In the present case over two years have elapsed since prosecution was instituted against defendant on January 10, 1979, and therefore the state bears a heavy burden of demonstrating that it is excused from trying defendant within the two year prescriptive period. Williams, supra; Devito, supra. At the hearing on the motion to quash the state argued that prescription had been interrupted because the defendant fled the state with the purpose of avoiding apprehension and that obtaining his presence for trial within the two year period established by C.Cr.P. art. 578 was beyond their control. The record, however, suggests otherwise. As previously discussed, defendant testified that his move to California was motivated out of concern for his personal safety. The state failed to rebut that explanation for defendant's actions.
Assuming arguendo that the defendant fled to avoid prosecution, the prescription clock begins to run once again when the state regains its capacity to secure defendant's presence for trial. State v. Devito, supra. The record reflects that the state knew as early as August of 1980 that defendant was in the custody of Los Angeles County officials and accordingly placed a detainer on defendant and instituted extradition proceedings. First Assistant District Attorney Charles Richard testified that every effort was made to extradite defendant but the evidence does not support that conclusion. Not one of the state's witnesses could explain why efforts to extradite defendant were unsuccessful.[2] The state did not refute defendant's testimony that he appeared before the California courts three times for extradition while out of jail on a fugitive bond, and that the proceeding was finally dismissed due to the state's neglect.
The state has not demonstrated that any genuine effort was made to locate defendant and therefore one cannot conclude that obtaining his presence was beyond their control. Therefore, the state failed to *644 carry its burden of demonstrating an interruption of the time period established by C.Cr.P. art. 578.
For the reasons assigned hereinabove, the defendant's Motion to Quash is sustained.
REVERSED AND RENDERED.
NOTES
[1] Testimony of law enforcement officers including the sheriff's deputy who handled defendant's extradition, supports this contention.
[2] It should be noted that Charles Richard, who personally handled the Jones file testified he had no idea how the state finally obtained custody of defendant.