615 So.2d 496 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Frank BUTLER, Defendant-Appellant.
No. 92-730.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*498 David Wayne Burton, De Ridder, for State of LA.
David L. Wallace, De Ridder, for Frank Butler.
Before STOKER, THIBODEAUX and COOKS, JJ.
THIBODEAUX, Judge.
On January 15, 1990, defendant, Frank Butler, was indicted by the Beauregard Parish grand jury for two counts of distribution of cocaine, a violation of LSA-R.S. 40:967(A)(1), and one count of distribution of marijuana, a violation of LSA-R.S. 40:966(A)(1). The offenses were alleged to have been committed on or about November 10, 1988 and May 2, 1989. At arraignment, defendant waived formal reading of the bills of indictment and pled not guilty to each charge. Defendant filed a motion to quash which the court denied and trial began on October 21, 1991. On October 25, 1991, defendant was found guilty by a jury of two counts of distribution of cocaine, and not guilty of distribution of marijuana. On April 2, 1992, defendant was sentenced to a period of one hundred and eight months on each charge, sentences to run concurrently, subject to such commutation as may be allowed by law.
Defendant now appeals his conviction, alleging fifteen assignments of error. We affirm with instructions.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in failing to grant his motion to quash.
Defendant filed a motion to quash, alleging that the time limitation on the institution of prosecution had expired, and that his right to a speedy trial had been violated. After a hearing, the trial court denied defendant's motion to quash. La.C.Cr.P. art. 572 provides in pertinent part:
No person shall be prosecuted, tried, or punished for an offense not punishable by death unless the prosecution is instituted within the following periods of time after the offense has been committed:
(1) Six years, for a felony necessarily punishable by imprisonment at hard labor;
Additionally, La.C.Cr.P. art. 578 states in pertinent part:
Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;

*499 (2) In other felony cases after two years from the date of institution of the prosecution; and
Prosecution is instituted in criminal cases either by filing a bill of information or by grand jury indictment. La.C.Cr.P. art. 382; State v. Jones, 443 So.2d 639 (La.App. 3d Cir.1983).
The defendant was charged with two counts of distribution of cocaine, a violation of LSA-R.S. 40:967, a felony necessarily punishable by imprisonment at hard labor. Thus, the State had six years from the time of the offense to institute prosecution and two years from the institution of prosecution to commence trial. The incidents giving rise to the charges occurred on May 2, 1989 and November 10, 1988. The State instituted prosecution by grand jury indictment on January 15, 1990. Prosecution was instituted by grand jury indictment and not on the day on which defendant was arrested. State v. Butler, 302 So.2d 585 (La.1974). Thus, the State clearly instituted prosecution within the six year statutory limitation. Furthermore, trial commenced on October 21, 1991, also within the two year statutory limit. Therefore, the State properly acted within its statutory authority in instituting prosecution and in proceeding to trial.
Defendant also alleges that his right to a speedy trial, as guaranteed by the Louisiana and United States Constitutions, was violated.
There are two separate and distinct bases for defendant's right to a speedy trial, a statutory right created by La.C.Cr.P. art. 701 and a constitutional right embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution.
La.C.Cr.P. art. 701, in part, provides:
A. The state and the defendant have the right to a speedy trial.
Defendant filed a motion for a speedy trial on July 11, 1991. Trial commenced on October 21, 1991, well within the statutory time limit.
The constitutional right to a speedy trial is not dependent on filing a motion. Defendant is correct in asserting that this right attaches when an individual becomes an accused, either by formal indictment or bill of information, or by arrest and actual restraint. State v. Dewey, 408 So.2d 1255 (La.1982).
Speedy trial claims are evaluated under the four-factor test enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The considerations in determining whether a defendant has been deprived of a speedy trial are: the length of the delay; the reasons for the delay; defendant's assertion of his rights; and, the actual prejudice to the defendant.
In the case sub judice, defendant was arrested on May 3, 1989 on these identical charges of distribution of cocaine. Defendant posted bond and was released. At arraignment in May or June of 1989, defendant claims that his court appointed counsel advised him to go home since the charges against him were not going to be pursued "at that time."
On January 15, 1990, defendant was indicted by the Beauregard Parish grand jury. Defendant filed a motion for a speedy trial on July 11, 1991. Trial commenced on October 21, 1991, and defendant was found guilty.
The length of delay, calculated from the time of defendant's initial arrest on May 3, 1989, was two and a half years. The peculiar circumstances of each case will determine the weight to be ascribed to the length of the delay and the reason for the delay. State v. Reaves, 376 So.2d 136 (La.1979).
Defendant asserts the reason for delay was the District Attorney's decision not to prosecute him because of mistaken identity. The only evidence of this is defendant's own self-serving statements. The only argument asserted by the State was that defendant's trial was postponed due to a homicide case that was called for trial on May 20, 1991, the same time defendant's trial was scheduled. The following jury week was also full, further delaying the commencement of trial. There is no indication that the State deliberately delayed the *500 trial in an attempt to hamper the defense. See, State v. McDaniel, 340 So.2d 242 (La.1976).
Next, the court should consider defendant's assertion of his right to a speedy trial. On July 11, 1991, defendant filed a Motion for Speedy Trial and trial commenced on October 21, 1991, three and one half months from the first assertion of his right to speedy trial. Defendant's liberty was not hindered nor was he under a bail obligation during this time.
Finally, this court should consider the actual prejudice suffered by defendant due to the delay. In brief, counsel asserts that the "ability to prepare a defense three years after a date is very difficult when one is trying to proceed with either an alibi or other type of evidence." This argument was asserted at the hearing on the Motion to Quash. However, defendant does not allege that any witnesses on his behalf became unavailable during this time frame. Furthermore, defendant was arrested on May 3, 1989. One of the incidents occurred the day before the arrest and the other occurred approximately six months earlier. Defendant was put on notice at the time of arrest and any preparation of an alibi defense should have begun at this time and not at the time of trial.
The length of delay was not so unreasonable as to deny the defendant the right to a speedy trial. Although the State may not have shown sufficient reason for the delay between the May, 1989 arrest and the trial date in May, 1991, once the right was asserted, the State proceeded to trial in a timely manner. Considering all of these factors, the trial court did not err in denying defendant's Motion to Quash.

Assignment of error No. 1 lacks merit.

ASSIGNMENTS OF ERRORS NOS. 2, 3 and 4
These assignments have been combined by the defendant and will be treated concurrently with each other.
By these assignments of error, defendant contends that the court erred in failing to grant a mistrial when defense counsel's veracity was called into question by a juror during voir dire examination, for failing to allow defense counsel to pursue the statement of the juror with the other potential jurors, and in denying defense counsel's motion for a time delay in order to make application to the court of appeal for writs.
The brief colloquy between the district attorney and the potential juror is as follows:
Q Despite the fact you know both Mr. Wallace and me, do you feel like you could still be a fair juror for both sides?
A No, I don't.
Q You do not?
A No.
Q Okay. So you feel like that would affect your ability to render a fair verdict for one side or the other, without telling us any specifics.
A It would giveit would give me difficulty. I think I could judge whatever facts were presented and make a fair judgment because I would have no feelings pro or con for the defendant. I mean, I would judge it on the facts. But I would not feel confident dealing with Mr. Wallace from my personal experience. His veracity would be questionable.
BY MR. BURTON:
Well, well, let's don't
BY MR. WALLACE:
Your Honor, may we approach the bench, please?
After the jurors were removed from the courtroom, defendant's motion for a mistrial was denied. The court stated, among its reasons, that the juror's statement was brief, not very intelligible, the court itself did not fully understand what was said, and the essence of the trial is the "believability" of the witnesses, not the attorneys. Furthermore, the trial judge admonished the jury that the potential juror's opinion had nothing to do with the case, and the only evidence to be considered was what was heard on the witness stand as testimony and as evidence admitted before the court. The trial judge also excused the juror from service on this jury and instructed *501 her not to discuss her feelings with any of the other members of the venire.
La.C.Cr.P. art. 770 provides in part that:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official during the trial or in argument refers directly or indirectly to:
(1) Race, religion color or national original, if the mark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
In other situations where prejudicial remarks are made before the jury, the trial judge may use his discretion to admonish the jury to disregard the remark rather than grant a mistrial. La.C.Cr.P. art. 771. Since mistrial is such a drastic remedy, unless mandated by article 770, it should only be used in those situations which might result in substantial prejudice to the defendant. State v. Burdgess, 434 So.2d 1062 (La.1983).
In the present situation, the trial judge did not abuse his discretion in denying the motion for a mistrial and in denying defense counsel's request to pursue the matter with the other potential jurors.
The defendant's immediate objection to the juror's remarks was sustained. The remark was brief and almost unintelligible. Even defense counsel stated that he may have "mis-heard" it.
The failure to grant a mistrial or admonish the jury, as defendant requested, does not constitute reversible error because it is not clear that other prospective jurors heard the remark, as indicated by the inability of the trial judge and counsel to hear the response. Therefore, there was no prejudice to the defendant. See, State v. Gray, 351 So.2d 448 (La.1977).
Additionally, the trial judge was correct in denying defense counsel's motion for a time delay in order to make application to the court of appeal for writs. Since there was no error in the court's denial of defendant's motion for mistrial, there was no error in granting a motion for a time delay.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends that the trial court erred by interrupting defense counsel in the opening statement and prohibiting argument that there was a mistake in the identity of the defendant.
Defense counsel stated in his opening statement: "The evidence will show that when Frank came to court for his arraignment." At that point, the district attorney objected. The jurors were dismissed as both counsel approached the bench. Defendant apparently was indicted by another grand jury in 1989. He appeared in court and was told by his attorney that the prosecution was not going forward at that time, supposedly because the district attorney's office confused the defendant with his brother, Larry Butler.
The District Attorney corroborated defendant's assertion that defendant had previously appeared in court and the district attorney's office concluded that it was not going to pursue the charges. The State agreed that the defendant should still be allowed to show mistake in identity during trial, but argued it would be hearsay to allow defendant to testify as to what his attorney or the district attorney said back in 1989.
The court decided to limit defense counsel's opening statement. Defense counsel was not allowed to discuss the fact that the district attorney's office did not go forward with these same charges back in 1989. The court felt that this issue was not relevant to guilt or innocence.
The normal order of trial is outlined in La.C.Cr.P. art. 765, and section 4 of the statute sets forth the provisions for opening statements by the State and the defendant. *502 Articles 767 and 769 govern the opening statement of the State but there is no similar provision which deals with the opening statement of the defendant. Certain limitations on the scope of defense's opening statement have been developed jurisprudentially.
When defense counsel avails himself of the opportunity to make an opening statement, the statement must be confined to an explanation of the nature of the defense and the evidence by which he expects to establish it. State v. Bell, 263 La. 434, 268 So.2d 610 (1972), on rehearing; State v. James, 459 So.2d 1299 (La.App. 1st Cir.1984), writ denied, 463 So.2d 600 (La.1985). The trial court is vested with wide discretion in its control of the opening statement, and its ruling will not be disturbed absent a manifest abuse of discretion. State v. Denney, 352 So.2d 204 (La.1977); State v. Lee, 498 So.2d 1177 (La.App. 3d Cir.1986), writ denied, 504 So.2d 874 (La.1987).
The trial court was within its discretion in prohibiting defense counsel from referring to defendant's previous arraignment and appearance on the same charges.
The trial judge in his reasoning stated:
I am going to rule that you may not comment on this matter in your opening statement, Mr. Wallace, because I do not feel what happened at this man's arraignment has relevance to his guilt or innocence. Now, you may be able to present evidence on it with respect to the mis-identification issue, and you may be able to argue this mis-identification issue in your opening statement. I'm not suggesting that you can't do that. But specific comments to the jury about what may or may not have happened at this earlier arraignment I see as having no relevance whatsoever at this point in the trial.
There was no prejudice resulting from the trial court's ruling. Defendant was still given the opportunity, and did in fact take advantage of the opportunity, to argue his misidentification defense before the jury. Furthermore, when defense counsel questioned defendant's former counsel about defendant's previous arrest and subsequent dismissal, no mention was made that the charges were dropped because of misidentification.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, defendant contends that the trial court erred by allowing an assistant district attorney, who had not been identified in the voir dire examination, to sit at counsel table.
Defense counsel argues that in doing so, it was unfair to the defense because it failed to allow defense counsel an opportunity to properly question jurors about their knowledge of Mr. Milam, the assistant district attorney, until after the jury had been seated.
The record reflects that Mr. Milam's name was mentioned by the court as one of the attorneys for the prosecution during the voir dire. Thus, the court asked if the jurors knew Mr. Milam even if he was not there in person. Furthermore, defendant fails to show how he was prejudiced by Mr. Milam's subsequent seating at counsel's table.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 7
Defendant argues that the trial court erred in allowing the district attorney to use the term "wired" which, in effect, introduced evidence of another crime of the use or possession of drugs.
During the direct examination of the state's witness, Deputy Sheriff Jerry Colley, Jr., the district attorney solicited the following testimony:
Q Now, how close a look did you get at this defendant on that occasion?
A Real close. He was kind ofvery active. I'd say, I guess you would say. The term on the street used is wired or he was excited.
BY MR. WALLACE:
Objection, Your Honor. That's obviously an opinion and he's not capable of giving that type of opinion.
Defendant argues that a mistrial should have been granted. We disagree. The trial judge overruled defendant's objection *503 and denied defendant's motion for a mistrial, and instructed the district attorney not to proceed with this line of questioning. The trial judge felt that the word "wired" was "innocuous" in this circumstance. The word "wired" is susceptible to different meanings. Webster's Dictionary defines "wired" as follows:
reinforced by wire (as for strength); furnished with wires (as for electric connections); bound with wire; having a wirework netting or fence; feverishly excited (emphasis added). Webster's Ninth New Collegiate Dictionary, 1983.
Also, the statement by Deputy Colley indicated that the defendant was "wired or excited," thereby clarifying what he meant when describing the defendant.
This assignment of error lacks merit.

ASSIGNMENTS OF ERRORS NOS. 8, 9 and 14
These assignments refer to evidentiary matters concerning the distribution of marijuana charge for which defendant was acquitted. His acquittal renders a discussion moot.

ASSIGNMENT OF ERROR NO. 10
By this assignment of error, defendant contends that the trial court erred by allowing into evidence the cocaine that was tested on a mass spectrometer, without certification of the good working order of the machine and the verification and validity of the testing.
During trial, Richard Donahoe was accepted as an expert analyst in the field of drug identification. Mr. Donahoe testified that, while working for the Southwest Regional Crime Lab, he tested State's Exhibit No. 6 and found the substance to be cocaine. The testing was performed on a gas chromatograph/mass spectrometer on June 5, 1989. Mr. Donahoe testified that he tuned and calibrated the device each day, but he did not have any documents in court to show when the machine was calibrated.
Defendant objected to the introduction of the evidence, citing State v. Rowell, 517 So.2d 799 (La.1988). In Rowell, the supreme court indicated that the admission of a gas chromatography test result, to determine blood alcohol content in a driving while intoxicated case, was erroneous where the state failed to meet its burden of proving that the regulations insured the reliability and integrity of the blood alcohol analysis because they did not contain provisions for repair, maintenance, inspection, cleaning, certification and chemical accuracy. In Rowell, supra, the chemist who performed the test testified that the gas chromatograph was not routinely inspected or maintained, nor were the chemicals used to calibrate the device spot-checked for standard quality.
In the case sub judice, the analyst testified that the gas chromatograph was calibrated every six months. Furthermore, the analyst testified that he tuned and calibrated the device each day and, before testing the evidence, he tested a control substance, known to be cocaine, which insured the proper working accuracy of the device. After conducting the test on the State's exhibit, Mr. Donahoe, who was qualified as an expert in the identification of substances believed to be cocaine, stated that he was positive the substance was cocaine.
This present case can be distinguished from Rowell. In Rowell, the chemist testified that the gas chromatograph was not routinely inspected and maintained. In the present case, Mr. Donahoe testified that someone comes every six months to test the instrument. Mr. Donahoe also testified that he did a tuning and a calibration on the machine each day. Furthermore, a control run is done daily.
In light of the foregoing, it was proper for the trial court to rely on the results of the gas chromatograph. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 11
By this assignment, defendant argues that the trial court erred by commenting on the evidence by saying that the chain of custody was complete and the evidence admissible. Furthermore, the defendant claims the trial court erred in failing to grant a mistrial based on this improper comment.
*504 The basis for this assignment of error can be found in the record, as follows:
BY THE COURT:
All right. All right, the Court will overrule the objection and will order the evidence received on the basis of the testimony of both this witness and the various officers who handled the evidence from the time of receipt from whomever they received it from. I recognize that's a jury issue but anyway, from the time of the purchase forward, the chain of custody appears to be complete to the Court, so the Court will accept the evidence and will allow the evidence to be demonstrated to the jury.
BY MR. BURTON:
Thank you. Your Honor.
* * * * * *
 (BENCH CONFERENCE
 PROCEEDINGS)
BY MR. WALLACE:
Your Honor, with all due respect, I think the Court just made a comment on the evidence by stating in front of the jury that the chain of evidence was complete. I think that's a jury question for the jury to decide whether it is complete or not.
BY THE COURT:
It is a question that I have to decide in order to determine admissibility, and I made that statement. If you want to make an objection, make your objection.
BY MR. WALLACE:
I would so object, Your Honor. I think the Court's statement on the facts and evidence of the case, based upon that at this time, I would move for mistrial.
The trial judge was correct in overruling defendant's motion for a mistrial. The admissibility of the evidence is a question of law for the trial judge to decide. A continuous chain of custody is not essential, provided the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object which was originally seized by the officers. State v. Sharp, 414 So.2d 752 (La.1982). Lack of positive identification goes to the weight of the evidence rather than its admissibility. Ultimately, connexity is a factual matter for determination by the jury. State v. Sharp, supra.
In the present case, the trial judge only accepted the evidence and allowed it to be demonstrated to the jury. In doing so, the trial judge stated that "I recognize that's a jury issue, but ... the chain of custody appears to be complete to the Court," thus leaving the ultimate decision to the jury. Defendant objected, claiming that the court made an impermissible comment on the evidence.
A judicial comment or opinion given on evidence that is not relevant to the guilt or innocence of the accused does not warrant a reversal. A ruling on admissibility of evidence and remarks by the trial judge giving reasons for his ruling on objections are not objectionable as comments on the evidence unless such remarks are unfair or prejudicial. State v. Guin, 444 So.2d 625 (La.App. 3d Cir.1983).
In the present case, the trial judge's remarks were made to explain his former ruling regarding the admissibility of the cocaine into evidence and the testimony of Mr. Donahoe, the analyst who identified the evidence as cocaine. Such comments are not relevant to the guilt or innocence of the accused. Furthermore, defendant shows no unfairness or prejudice resulting from the trial judge's comments.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends that the trial court committed an error by not allowing Richard Morton, former counsel for defendant, to testify in the presence of the jury as to his facts and knowledge about the case.
Defendant waives argument on this error, therefore this assignment will be considered abandoned by the defendant and will not be discussed according to the Uniform Rules of the Courts of Appeal, Rule 2-12.4.

*505 ASSIGNMENT OF ERROR NO. 13
By this assignment, defendant claims that the trial court erred by not allowing the verdict of not guilty to be placed first on the list of verdicts tendered to the jury.
Defense counsel feels that since the burden of proof is on the state to prove that there is guilt beyond a reasonable doubt, the first verdict a jury should look at should be the verdict of not guilty.
La.C.Cr.P. art. 809 states:
After charging the jury, the judge shall give the jury a written list of the verdicts responsive to each offense charged with each separately stated. The list shall be taken into the jury room for use by the jury during its deliberation.
A charge which lists all possible verdicts and defines the nature of a qualified verdict is sufficient in law. State v. Ferguson, 240 La. 593, 124 So.2d 558 (1960).
There is no authority requiring the trial judge to list the verdicts as defendant suggested. Since all verdicts were listed as required by law, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 15
Defendant contends that the law and the evidence were not sufficient to sustain a conviction.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982). It is the role of the fact finder to weigh the respective credibility of the witnesses. The appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See, State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
In this case, defendant was charged with knowingly and intentionally distributing cocaine. LSA-R.S. 40:967(A) provides:
Except as authorized by this Part1 or by Part VII-B of Chapter 5 of Title 402 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.
Deputy Saul Wilson and Officer John Jackson testified at trial that, while working undercover for the DeRidder City Police Department, they purchased "rock" cocaine from the defendant on two occasions.
Deputy Saul Wilson testified at trial that on May 2, 1989, while working undercover with Officer John Jackson and two other officers, he went to the residence of Annie Mae Butler. Upon arriving at the trailer of Mrs. Butler, defendant's mother, Deputy Wilson and Officer Jackson entered the residence. Defendant, Frank Butler, allowed both men inside. Deputy Wilson asked for Marvin Butler and defendant replied "Well, what are you looking for?" Deputy Wilson replied that he was looking for a twenty dollar "rock." Defendant left the room and returned with two rocks of cocaine. Deputy Wilson chose one and gave the defendant twenty dollars. Officers Skinner and Sampler, who remained in the car, told Deputy Wilson that Frank Butler was the person who let him in the trailer. Deputy Wilson identified the defendant at trial.
Officer John Jackson corroborated Deputy Wilson's story. Officer John Jackson *506 further testified that on November 10, 1988, both he and Deputy Wilson, along with a confidential informant, went to the trailer of Annie Mae Butler. Deputy Wilson remained in the car while Officer Jackson and the CI went inside the trailer. After entering the trailer, Officer Jackson asked for Annie Mae Butler, defendant's mother. The defendant asked him what he wanted, to which Officer Jackson replied, "I want a forty dollar rock." The defendant left the room and came back with three "rocks" of cocaine. Officer Jackson gave him forty dollars and left. Officer Jackson testified that there was no doubt in his mind that defendant was the person who sold him the cocaine. Defendant testified that the first time he ever saw Officer Jackson and Deputy Wilson was when they arrested him and that he was not at his mother's house on May 2, 1989.
Sufficient evidence was presented in this case. The only determination to be made is the credibility of the witnesses. The question of credibility is within the sound discretion of the trier of fact. Their factual determinations are entitled to great weight and will not be disturbed unless contrary to the evidence. State v. Johnson, 580 So.2d 998 (La.App. 3d Cir.1991).
The jury was presented with the evidence and the testimony of each witness. The jury may accept or reject, in whole or in part, the testimony of each witness. State v. Jeansonne, 580 So.2d 1010 (La.App. 3d Cir.1991). A positive identification by only one witness is sufficient evidence to support a conviction. State v. Thomas, 589 So.2d 555 (La.App. 1st Cir.1991).
The jury obviously determined that the witnesses presented by the State were more credible than those presented by the defendant. The jury was polled after its verdict whereupon it was determined that eleven out of twelve jurors had agreed to the verdicts in counts one and two. The duty of the jury in considering the evidence and in applying that evidence to the law as given by the court, is to give the defendant the benefit of every reasonable doubt arising out of the evidence in the case. If not convinced of the defendant's guilt beyond a reasonable doubt, it is the jury's duty to find the defendant not guilty. The jury is the exclusive judge of the facts. We conclude that the jury had sufficient evidence before it to determine that defendant was guilty of two counts of distribution of cocaine. Therefore, this assignment of error lacks merit.

ERROR PATENT
LSA-C.Cr.P. art. 930.8 instructs the trial court to inform the defendant of the prescriptive period for post-conviction relief at the time of sentencing. The court failed to do so. However, this omission does not impact on the excessiveness of a sentence and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final, LSA-C.Cr.P. art. 914, 922, so prescription has not yet begun to run. The purpose of Article 930.8(C) is to inform defendant of the prescriptive period in advance of the finality of judgment.
The district court is directed to inform the defendant of the provisions of Article 930.8(C) by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings. See, State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); State v. Stephens, 604 So.2d 203 (La.App. 2d Cir.1992); State v. Reeves, 613 So.2d 1061 (La.App. 3d Cir.1993).

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED WITH INSTRUCTIONS.